Donald L. Kreindler
dkreindler@phillipsnizer.com
Jeremy D. Richardson
jrichardson@phillipsnizer.com
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103
(212) 977-9700

*Attorneys for Plaintiff Navajo Fabrics, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NAVAJO AIR, LLC, Plaintiff, | Civil Action No. 16-cv-9873 |
| -against- | **COMPLAINT** |
| CRYE PRECISION LLC and LINEWEIGHT LLC, Defendants. | |

Plaintiff Navajo Air, LLC d/b/a Navajo Fabrics ("Navajo"), by and through its undersigned counsel, complains of defendants Crye Precision LLC ("Crye") and Lineweight LLC ("Lineweight," and together with Crye collectively referred to as the "Defendants"), and allege as follows:

**NATURE OF THE ACTION**

1. This is an action for a declaratory judgment arising under the trademark laws of the United States (commonly referred to as the Lanham Act), 15 U.S.C. § 1051, *et seq.*, and the patent laws of the United States, 35 U.S.C. § 1 *et. seq.*

2. By this action, Navajo seeks a declaration that its past and future use of a printed camouflage pattern known alternately as Scorpion W2 and Operational Camouflage Pattern ("OCP"), and generally applied to textiles, has not infringed and will not infringe upon the purported trade dress rights under 15 U.S.C. § 1125(a) and patent rights under 35 U.S.C. § 1 *et. seq.*, and in particular 35 U.S.C. § 171, of the Defendants in two print designs known as Scorpion ("Scorpion") and MULTICAM ("MULTICAM"), printed camouflage patterns also generally applied to textiles.

3. Navajo also seeks a declaration that its use of the OCP print design has not constituted and will not constitute tortious interference with any contract or prospective economic advantage of the Defendants, and that its use of the OCP print design has not caused and will not cause Santee (defined below) to breach its contractual obligations to the Defendants.

4. Navajo also seeks a declaration that its use of the OCP print design has not constituted and will not constitute unfair competition for palming off and/or misappropriation of the Scorpion and/or MULTICAM print designs.

**THE URGENT NEED FOR DECLARATORY RELIEF**

5. In the absence of the declaratory relief requested in this action, Navajo will be forced out of business.

6. Navajo is a converter of textiles. A "converter" buys unfinished fabric (known in the textile industry as greige goods), which the converter then arranges to have "finished" (this generally includes bleaching, mercerizing, and dying or printing, but may and frequently does include other processes). The converter then sells the finished fabric to cutters, garment manufacturers, wholesalers and/or retailers.

7. Navajo supplies finished fabric conforming to required Government specifications to garment manufacturers who are "prime contractors" under contract with the United States

government for the manufacture and supply of army combat uniforms ("ACU's") and related items.

8. Sales of fabrics printed in the OCP camouflage design for use under United States Government contracts presently accounts for the vast majority of Navajo's business.

9. The uniforms and related items printed with the OCP camouflage design are used by various branches of the U.S. military.

10. Navajo engages Santee Print Works, Inc. ("Santee") to finish (including printing) its greige goods which are printed with the OCP camouflage design.

11. Since approximately autumn 2014 the U.S. Government has required that ACU's be printed exclusively with the OCP camouflage design. In autumn 2014, the Government issued change orders to all open contracts for ACU's requiring that new production of ACU's under those contracts be made from fabric printed with the OCP camouflage design.

12. Prior to 2014 the U.S. Government required that its ACU's be printed with the MULTICAM camouflage design.

13. Thus, prior to 2014 Santee printed Navajo's greige fabric for use under U.S. Government contracts in the MULTICAM camouflage design. Santee had entered a license agreement with Crye in 2012 for the use of the MULTICAM camouflage design pursuant to which Santee printed the Navajo greige goods. That license agreement required that Santee pay a royalty to Crye for its use of the MULTICAM camouflage designs. In October 2014 Santee and Crye entered into a new license agreement (the "Santee License"). Santee gave notice not to renew the Santee License to avoid the automatic renewal of the license agreement, and Crye terminated the Santee License as of October 28, 2016.

14. The U.S. Government claims to have created the OCP camouflage design and has obtained a utility patent for the OCP camouflage design from the U.S. Patent and Trademark Office (Patent No. US 9,062,938). The utility patent identifies as "References Cited" the Defendants' design patents for the Scorpion and MULTICAM camouflage designs.

15. Notwithstanding that the U.S. Government obtained a utility patent for the OCP camouflage design, Crye has insisted, without any apparent legal justification, that fabric printers including Santee pay Crye a royalty for use of the OCP camouflage design.

16. In furtherance of their unjustified claim to a royalty for printing the OCP camouflage design, the Defendants have sued fabric printers who have used the OCP camouflage design without paying a royalty to Crye, including an action in this Court before the Honorable Denise L. Cote entitled CRYE PRECISION LLC and LINEWEIGHT LLC v. DURO TEXTILES, LLC, under case number 15-cv-1681 (DLC) (the "Duro Action").

17. In 2014 the U.S. Government decided to prohibit its prime contractors from paying directly or indirectly any royalty to a third party (*e.g.*, Crye) for use of the OCP camouflage design in fulfilling orders from the U.S. Government for ACU's. To that end, the U.S. Government included the "Royalty" and "Refund of Royalty" clauses set forth in the Federal Acquisition Regulations ("FAR") in the change orders issued to convert the production of the ACU's from being made in the MULTICAM pattern to the OCP camouflage design (see FAR 52.227-6 and 52.227-9).

18. To Navajo's present knowledge, the U.S. Government has not yet demanded any recoupment of royalties paid under the contracts that were in place in 2014, and the U.S. Government has indicated by its contracting officer that any recoupment of royalties under those

contracts would be prospective only. The contracts that were in place in 2014 will all conclude at various times in 2017.

19. Most recently the U.S. Government has begun issuing solicitations for the next generation of contracts for ACU's and for other items that will be required to be produced in the OCP camouflage design. The first solicitation for ACU's incorporating the OCP camouflage design was issued a few months ago and closed a number of weeks ago (solicitation SPE 1C1-16-R-0081). The contracting officer has publicly stated that she intends to issue awards in the first calendar quarter of 2017. Because of the dispute with Crye over its demand for royalty payments for use of the OCP camouflage design, Navajo was prevented from participating in the bid process for SPE 1C1-16-R-0081.

20. Additional solicitations are anticipated in the first quarter of calendar year 2017. The new solicitations for items to be produced in the OCP camouflage design are expected to contain the Royalty and Refund of Royalty clauses and further contain certain custom provisions which require a prime contractor and its vendors for the OCP camouflage design printed fabrics to certify that there is no royalty for the printing of the OCP camouflage design included in the prices charged to the Government.

21. Navajo cannot manufacture and sell fabric printed with the OCP camouflage design for use in ACU's (the only camouflage print design that the U.S. Government now accepts for the majority of items purchased) if Crye is paid a royalty for use of the OCP camouflage design. As such, Navajo will be prevented from bidding on future government contract solicitations unless this Court grants the declaratory relief sought in this action.

22. At the same time, Santee (Navajo's only fabric printer and the only printer known to Navajo that is available to Navajo and capable of finishing greige goods in the quantities

needed by Navajo) has been improperly threatened by the Defendants with a lawsuit if it prints any fabric with the OCP camouflage design without paying a royalty to Crye for use of the OCP camouflage design.

23. This Catch-22 prevents Navajo from participating in the bid process for U.S. Government contracts to supply ACU's and other items that are or will be required to be fabricated from fabrics printed in the OCP because as part of the bid process Navajo would be required to affirm that no royalty for use of the OCP camouflage design will be included in the price of the goods it sells. Navajo does not have sufficient business other than the business of selling the OCP printed fabrics for use under Government contracts to be able to defray the costs of the Crye demanded royalty from other revenue sources and cannot include the cost of the Crye demanded royalty in the price which it would otherwise quote to prime contractors.

24. Accordingly, Navajo will be forced out of business unless this Court grants declaratory relief holding that Navajo's manufacture and sale of fabric printed with the OCP camouflage design (as to which the Defendants own no patent or trademark rights) does not violate any purported patent or trade dress rights of the Defendants, and that Navajo's finisher, Santee (without whom Navajo cannot supply fabric printed with the OCP camouflage design for use in ACU's for the U.S. Government), will have no liability to the Defendants for its printing of fabric with the OCP camouflage design.

**JURISDICTION AND VENUE**

25. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as an action arising under (i) the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and specifically 15 U.S.C. § 1121 [Lanham Act § 39]; (ii) U.S. Patent Law, 35 U.S.C. § 1 *et. seq.*; (iii) 28 U.S.C. § 1338(b) with respect to unfair competition; and (iv) under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

26. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) since this action arises under the Lanham Act, the Defendants conduct business in this judicial district, and a substantial part of the events giving rise to the claim herein occurred in this judicial district.

27. This action is related to the Duro Action in that: (a) this action and the Duro Action concern substantially similar parties; (b) there is substantial factual overlap; (c) the parties could be subjected to conflicting orders if this action is not assigned to Judge Cote; and (d) absent a determination of relatedness there will be substantial duplication of effort and expense, delay, and/or undue burden on the Court, parties or witnesses.

**THE PARTIES**

28. Navajo is a corporation organized and existing under the laws of the State of Rhode Island, with its principal place of business at 63 Tom Harvey Road, Westerly, Rhode Island 02891.

29. Santee has a principal place of business at 58 West 40th Street, 11th Floor, New York, New York 10018.

30. Upon information and belief, Crye is a New York limited liability company with its principal place of business at 63 Flushing Ave Unit 252, Brooklyn, NY 11205.

31. Upon information and belief, Lineweight is a New York limited liability company with its principal place of business in Brooklyn, New York.

32. Upon information and belief, the Defendants are related entities.

**FACTS GIVING RISE TO THIS ACTION**

33. Upon information and belief, Lineweight is the purported owner and Crye is the purported exclusive licensee of four patents (the "Design Patents") which are generally directed to camouflage patterns.

34. Among the Design Patents are: (i) Patent No. D487,848 (the "'848 Patent") which purportedly is related to the Scorpion print design; and (ii) Patent No. D592,861 (the "'861 Patent") which purportedly is related to the MULTICAM print design.

35. Upon information and belief, Crye purports to have developed the Scorpion and MULTICAM camouflage patterns.

36. Until late 2014, and for many years prior to then, the U.S. Government required that certain textile items be printed with the MULTICAM print design.

37. In or about 2012 the U.S. Government undertook various efforts to develop a different camouflage print design.

38. 22. Upon information and belief, the U.S. Government claims to have developed the OCP print design.

39. The U.S. Government filed two utility patent applications related to the Scorpion W2/OCP, and patents were issued pursuant to those applications on June 23, 2014, and July 7, 2014.

40. Defendants own no patent or trademark rights in the OCP camouflage design.

41. The '848 and '861 Patents are referenced in the U.S. Government patents for the OCP as a consideration of prior art.

42. Crye has never challenged the U.S. Government patent for the OCP print design.

43. In or about mid-2014 the U.S. Government decided to approve the OCP print design for ACU's for use by the various branches of the U.S. military.

44. In 2014 the U.S. Government decided to prohibit its contractors from paying any royalty to a third party (*e.g.*, Crye) for use of the OCP camouflage design in fulfilling orders from the U.S. Government for ACU's.

45. The U.S. Government issued modifications to the open contracts for ACU's to require contractors to convert production from using fabric printed in the MULTICAM print design to using fabric printed in the OCP print design, and included therein the "Royalty" and "Refund of Royalty" clauses which if invoked would require that the amount of any royalties included in the offered pricing be refunded to the Government.

46. Printers who wish to print the OCP print design have to obtain the digital screens therefor from the U.S. Government.

47. The U.S. Government has included both the "Royalty" and "Refund of Royalty" clauses in new solicitations for follow-on contracts for the ACU and for other items that are purchased in camouflage patterns.

48. In addition, the U.S. Government has included tailored provisions in the new solicitations requiring prime contractors to certify with their offers that there is no royalty for printing the fabrics in the OCP incorporated directly or indirectly into the pricing offered for the end items.

49. The goods purchased under these Government contracts are all purchased on a firm fixed price basis set at per unit prices.

50. Upon information and belief, Crye licenses finishers/printers to print and sell fabric in the MULTICAM pattern, both for products sold commercially and for orders placed by or on behalf of the U.S. Government.

51. The U.S. Government's decision — requiring prime contractors to certify with their offers that there is no royalty for printing the OCP incorporated into the pricing — has left Navajo and other suppliers who, directly or indirectly, have or have had license agreements with Crye, in the difficult position of either not being eligible to supply the prime contractors with

fabric printed with the OCP camouflage design because of the purported royalty obligation to Crye, or refusing to pay Crye the royalty and continue printing greige goods in the OCP, an action which will certainly trigger a lawsuit by Crye. The Defendants have aggressively pursued their purported but highly questionable right to receive royalties for the use of the OCP camouflage design as to which it has no apparent patent or trademark rights by suing entities which have or have had license agreements with Crye and which have printed fabric in the OCP and have not paid Crye therefor and by threatening suit against entities – such as Santee – who are perceived by the Defendants as likely to print fabric in the OCP and not pay them royalties therefor.

**Santee Print Works:**

52. Navajo's printer, Santee, obtained a license from Crye to make use of the MULTICAM pattern.

53. Upon information and belief, Santee entered a license agreement with Crye in 2014 with an effective date of October 27, 2014 (the above referenced Santee License).

54. The Santee 2014 License Agreement contains a Schedule B which lists as the items covered by the License Agreement for commercial sales the MULTICAM print design, but also for U.S. Government sales, the "OCP Scorpion W2" print design. The Santee 2014 License Agreement provides that it shall be governed by New York state law and that any action pertaining thereto shall take place in the state or federal courts located in the State of New York.

55. Section 7 of the Santee License contains a restrictive covenant unlimited in scope that is very similar to the restrictive covenant of the Duro license (discussed below). The Santee License provides:

> Restriction on Similar Products. Except for the Products for which Crye shall be entitled to receive Licensing Fees, [Santee] agrees that it shall not, at any time during the term of this Agreement or at

> any time thereafter, make or provide, or assist or encourage others to make, products which are confusingly similar in design or appearance (i.e., color palette, arrangement or placement of elements) to, or which constitute derivative works of, any of the IP.

56. A substantially similar provision in the license agreement between Crye and Duro was held unenforceable by Judge Cote in the Duro Action (discussed below).

57. Upon information and belief, Santee gave Crye the 30 day notice of intent to terminate the Santee License under the terms of the Santee License.

58. Upon information and belief, the Santee License expired as of midnight October 28, 2016.

59. Upon information and belief, the Defendants have threatened to sue Santee if it prints any fabric with the OCP print design.

60. Since at least October 2016, Crye has issued repeated demands to Santee that it provide a sworn written statement from an officer or other authorized signatory of Santee attesting that, at a minimum, all sales by Santee of "Products" as defined in the Santee License (which expressly includes the OCP print design) ceased as of October 28, 2016.

61. By e-mail of December 14, 2016, Crye's general counsel, Jonathan E. Antone, wrote to Kevin Sheehan of Santee, stating, in part:

> Moreover, as I have now reminded you several times, the recently expired agreement required that Santee submit a sworn written statement to Crye (the required contents of which were detailed in my October 3, 2016 letter, again attached for reference) by no later than November 26, 2016. Santee has failed to meet this obligation, and, as a result of this and the payment failures described above, is in breach of the agreement.

62. In light of the foregoing, the very questionable justification for the Defendants' claimed legal rights with respect to sales of the OCP camouflage design (and especially in light of the Defendants' propensity to sue entities that make use of the OCP print design without

paying a licensing fee to the Defendants for such use, even for the purposes of fulfilling U.S. Government contracts), an actual and justiciable controversy requiring declaratory relief exists between Navajo and Defendants.

**The Action against Duro:**

63. The Defendants have demonstrated their propensity to sue entities that make use of the OCP print design without paying a licensing fee to the Defendants for such use.

64. Upon information and belief, Duro Textiles, LLC (the defendant in the Duro Action) was one of the printers that obtained a license from Crye to make use of the MULTICAM pattern. The agreements between Crye and Duro are memorialized in license agreements entered into in 2008 (the "Duro 2008 License"), 2010 (the "Duro 2010 License") and 2012 (the "Duro 2012 License").

65. The Duro 2012 License included a provision prohibiting Duro from printing camouflage fabrics similar to MULTICAM during and after the term of the license. Specifically, section 3(h) of the Duro License provides:

> Intellectual Property. [Duro] acknowledges and agrees that it will not disassemble, decompile, or reverse engineer MULTICAM or any other intellectual property right of CRYE, including patent, trademark and copyrights, licensed from CRYE or, during or after the term or expiration of this Agreement, make any products that are similar to MULTICAM through color palette, pattern or arrangement or placement of any elements incorporated in MULTICAM. Furthermore, [Duro] agrees that it shall not make any additions to, new renderings of, or modifications, embellishments, derivative works or other changes of or to MULTICAM or any other intellectual property rights of CRYE without CRYE's prior written consent and [Duro] agrees that all such additions, renderings, modifications, embellishments, derivative works or otherwise shall be and remain the sole property of CRYE.

66. The Duro 2012 License expired on April 10, 2014, and is governed by New York law.

67. Upon information and belief, in a June 11, 2014, letter to Crye, Duro rejected a new proposed non-exclusive license agreement with Crye. Among other reasons given to Crye, Duro rejected the agreement because it contained "an unacceptable limitation on printing similar patterns . . . that Duro cannot agree to, as any such limitation would have a significant negative impact on Duro's business given that recent U.S. Army announcement that it will be utilizing its own pattern . . . on a going-forward basis."

68. The Defendants filed a complaint against Duro dated November 11, 2014, in the Federal District Court for the Southern District of New York in case number 14-cv-9012 (DLC). That complaint was directed at Duro's printing and sale of MULTICAM fabric after the expiration of the Duro 2012 License and included claims for breach of contract, trademark infringement, and patent infringement. The patent infringement claim was directed exclusively to Duro's commercial sales of MULTICAM and explicitly excluded Duro's Government sales.

69. On January 12, 2015, the Defendants amended their complaint to eliminate claims related to the printing of MULTICAM fabric (except to recover unpaid license fees) and instead focused on Duro's sales of OCP in alleged breach of § 3(h) of the Duro 2012 License.

70. On January 29, 2015, Duro filed a motion to dismiss the Defendants' amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Duro also moved to dismiss on the ground that the Defendants had failed to plead sufficient facts to support its allegations of diversity jurisdiction.

71. On February 17, 2015, the Defendants filed a notice of voluntary dismissal without prejudice.

72. The Defendants filed a new complaint, dated February 17, 2015, in New York state court. Duro removed the action to this Court on March 6, 2015 (the above referenced Duro Action).

73. The Defendants filed an amended complaint on June 25 in the Duro Action alleging five causes of action. The fourth and fifth causes of action, both breach of contract claims, were remanded to state court on June 29, 2015.

74. The three remaining causes of action of the amended complaint were for: (i) breach of contract alleging that Duro's production and sales of OCP breach § 3(h) of the Duro 2012 License; (ii) a Lanham Act claim for trade dress infringement under 15 U.S.C. § 1125(a), alleging that OCP misappropriated the MUTLICAM trade dress, and Duro's manufacture of OCP products was therefore likely to cause confusion as to the origin, sponsorship, or approval of Duro's goods, services, or commercial activities; and (iii) common law unfair competition claim alleging that Duro both palmed off and misappropriated the MULTICAM trade dress.

75. On October 23, 2015, Duro moved for summary judgment on the three remaining three causes of action. Among other arguments, Duro claims that the restrictive covenant set forth in § 3(h) is unenforceable and that the Defendants had failed to establish the likelihood of confusion or bad faith required for its trade dress infringement and unfair competition claims.

76. By order dated April 22, 2016, Judge Cote granted summary judgement in favor of Duro and dismissed all three of the Defendants' causes of action with prejudice.

77. The issues as to Defendants' claims in the Duro Action regarding Duro's use of the OCP camouflage design are essentially the same issues as in the instant action for which Navajo seeks declaratory relief.

**The Action against Bennettsville:**

78. Upon information and belief, Bennettsville Printing ("Bennettsville") was another printer that obtained a license from Crye to make use of the MULTICAM pattern.

79. The license agreement between Crye and Bennettsville contained a similar restrictive covenant unlimited in scope.

80. As with Duro, the Defendants sued Bennettsville (the "Bennettsville Action") for its use of the OPC camouflage design. See Crye Precision LLC and Lineweight LLC v. Bennettsville Printing, USDC EDNY case number 1:15cv00221; J. Block. That case is pending decision on a motion for summary judgment filed by the Defendant.

**FIRST CLAIM FOR RELIEF**
**(Declaration of Noninfringement of Design Patent for the Scorpion (Patent No. D487,848) and MULTICAM (Patent No. D592,861) Print Designs)**

81. Navajo repeats and incorporates by reference the allegations in the foregoing paragraphs.

82. An actual controversy has arisen and now exists between Navajo and the Defendants concerning whether Navajo's past and future use of the OCP print design has infringed and will infringe the Defendants' purported design patent rights in the Scorpion and MULTICAM print designs.

83. Navajo has offered for sale and/or sold, and intends to continue to offer to sell and sell textile fabric printed with the OCP camouflage print design.

84. Navajo contends that its use of the OCP print design does not and will not infringe upon the Defendants purported design patent rights, if any, in the Scorpion and MULTICAM print designs.

85. By virtue of the foregoing, Navajo seeks a judicial determination that by its past and future use of the OCP print design, it has not infringed and will not infringe the Defendants' purported design patent rights, if any, in the Scorpion and MULTICAM print designs.

86. A judicial declaration as to the parties' respective rights is necessary and appropriate.

**SECOND CLAIM FOR RELIEF**
**(Declaration of Noninfringement of Trade Dress)**

87. Navajo repeats and incorporates by reference the allegations in the foregoing paragraphs.

88. An actual controversy has arisen and now exists between Navajo and the Defendants concerning whether Navajo's past and future use of the OCP print design has infringed and will infringe the Defendants' purported trade dress rights in the Scorpion and MULTICAM print designs.

89. Navajo has offered for sale and/or sold, and intends to continue to offer to sell and sell textile fabric printed with the OCP camouflage print design.

90. Navajo contends that its use of the OCP print design does not and will not infringe upon the Defendants purported trade dress rights, if any, in the Scorpion and MULTICAM print designs.

91. By virtue of the foregoing, Navajo seeks a judicial determination that by its past and future use of the OCP print design, it has not infringed and will not infringe the Defendants purported trade dress rights, if any, in the Scorpion and MULTICAM print designs.

92. A judicial declaration as to the parties' respective rights is necessary and appropriate.

**THIRD CLAIM FOR RELIEF**
**(Declaration of No Contractual Breach)**

93. Navajo repeats and incorporates by reference the allegations in the foregoing paragraphs.

94. An actual controversy has arisen and now exists between Navajo and the Defendants concerning whether Navajo's past and future use of the OCP print design has caused and will cause Santee to breach its contractual obligations to the Defendants.

95. Navajo has offered for sale and/or sold, and intends to continue to offer to sell and sell textile fabric printed by Santee with the OCP camouflage print design.

96. Navajo contends that its use of the OCP print design does not and will not cause Santee to breach any contractual duty to the Defendants.

97. By virtue of the foregoing, Navajo seeks a judicial determination that by its past and future use of the OCP print design, it has not caused and will not cause Santee to breach any contractual duty to the Defendants.

98. A judicial declaration as to the parties' respective rights is necessary and appropriate.

**FOURTH CLAIM FOR RELIEF**
**(Declaration of No Tortious Interference)**

99. Navajo repeats and incorporates by reference the allegations in the foregoing paragraphs.

100. An actual controversy has arisen and now exists between Navajo and the Defendants concerning whether Navajo's past and future use of the OCP print design constitutes tortious interference with the Defendants' contracts and/or their prospective economic advantage.

101. Navajo has offered for sale and/or sold, and intends to continue to offer to sell and sell textile fabric printed with the OCP camouflage print design.

102. Navajo contends that its use of the OCP print design does not and will not constitute tortious interference with the Defendants' contracts and/or their prospective economic advantage.

103. By virtue of the foregoing, Navajo seeks a judicial determination that by its past and future use of the OCP print design, it has not tortiously interfered with the Defendants' contracts and/or their prospective economic advantage.

104. A judicial declaration as to the parties' respective rights is necessary and appropriate.

**FIFTH CLAIM FOR RELIEF**
**(Declaration of No Unfair Competition for Palming Off or Misappropriation)**

105. Navajo repeats and incorporates by reference the allegations in the foregoing paragraphs.

106. An actual controversy has arisen and now exists between Navajo and the Defendants concerning whether Navajo's past and future use of the OCP print design constitutes unfair competition for palming off and/or misappropriation of the Scorpion and/or MULTICAM print designs.

107. Navajo has offered for sale and/or sold, and intends to continue to offer to sell and sell textile fabric printed with the OCP camouflage print design.

108. Navajo contends that its use of the OCP print design does not and will not constitute unfair competition for palming off and/or misappropriation of the Scorpion and/or MULTICAM print designs.

109. By virtue of the foregoing, Navajo seeks a judicial determination that by its past and future use of the OCP print design, it has not unfairly competed by palming off or misappropriating the Scorpion and/or MULTICAM print designs.

110. A judicial declaration as to the parties' respective rights is necessary and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Navajo Fabrics LLC prays as follows:

A. For judgment declaring that Navajo's past and future use of the OCP print design has not infringed and will not infringe the Defendants design patent rights, if any, in the Scorpion and MULTICAM print designs;

B. For judgment declaring that Navajo's past and future use of the OCP print design has not infringed and will not infringe the Defendants trade dress rights, if any, in the Scorpion and MULTICAM print designs;

C. For judgment declaring that Navajo's past and future use of the OCP print design has not caused and will not cause Santee to breach any contractual duty to the Defendants;

D. For judgment declaring that Navajo's past and future use of the OCP print design has not tortiously interfered with the Defendants' contracts and/or their prospective economic advantage;

E. For judgment declaring that Navajo's past and future use of the OCP print design has not unfairly competed by palming off or misappropriating the Scorpion and/or MULTICAM print designs; and

F. For such other and further relief as the Court shall deem appropriate.

Dated: New York, New York
December 22, 2016

PHILLIPS NIZER LLP

By: _/s/ Jeremy D. Richardson_
Donald L. Kreindler
Jeremy D. Richardson
Attorneys for Plaintiff
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700